## UNITED STATES OF AMERICA
## SPECIAL PANEL

## 2014 MSPB 77

MSPB Docket No.
DA-0752-10-0223-E-1

EEOC Petition No.
0320110053

## Reynaldo Alvara,

## Appellant,

## v.

## Department of Homeland Security,

## Agency.

September 29, 2014

Gary Gilbert, Esquire, Ernest C. Hadley, Esquire, Julie E. Rook, Esquire, and Shannon C. Leary, Esquire, Silver Spring, Maryland, for the appellant.

Lamont D. Nahrgang, Esquire, and Peter Arcuri, El Paso, Texas, for the agency.

Peter Broida, Esquire, as amicus curiae.

## BEFORE

Special Panel Upon Certification by the
Merit Systems Protection Board

Dennis P. Walsh, Chairman, Special Panel
Chai R. Feldblum, Commissioner, Equal Employment Opportunity Commission
Anne M. Wagner, Vice Chairman, Merit Systems Protection Board
Vice Chairman Wagner issues a separate dissenting opinion.

## I.  INTRODUCTION

¶1        On August 13, 2014, the Merit Systems Protection Board (MSPB or Board) certified this case to the Special Panel.  The Board certified the matter to the Special Panel because it found that, when ruling on this case in *Petitioner v. Department of Homeland Security*, EEOC Petition No. 0320110053, 2014 EEOPUB LEXIS 1810 (E.E.O.C. July 10, 2014) (hereinafter Commission Decision), the Equal Employment Opportunity Commission (EEOC or Commission) incorrectly interpreted a provision of civil service law, rule, or regulation.  *See Alvara v. Department of Homeland Security*, 121 M.S.P.R. 453 (2014).  The Board also found that the evidence in the record did not support the Commission's decision and that the Commission's decision is so unreasonable that it amounts to a violation of civil service law, rule, or regulation.  *Id.*, ¶ 17.

¶2        The Special Panel's seminal case, *Ignacio v. U.S. Postal Service*, 30 M.S.P.R. 471 (Spec. Pan. 1986), provides that the Special Panel has jurisdiction when the Board certifies a case pursuant to 5 U.S.C. § 7702(c)(2).  *Ignacio* provides that when the Board makes a certification under section 7702(c)(2) the Special Panel is required to accept jurisdiction.  *Id.*  "The Panel's jurisdiction over this matter . . . establishes only one jurisdictional prerequisite, i.e., that the Board certify the matter to the Panel pursuant to 5 U.S.C. § 7702(d)(1)."  *Ignacio*, 30 M.S.P.R. at 476-77.  Under that standard, the Special Panel has jurisdiction to decide this case.

¶3        Pursuant to 5 U.S.C. § 7702(d)(2)(A), the Special Panel is to decide the "issues in dispute" and to deliver a final decision.  The Board may not force the Special Panel to review an EEOC decision because of its disagreement with the Commission's interpretation of discrimination law.  *See Holley v. Department of Health and Human Services*, 50 M.S.P.R. 271 (1991).  The Special Panel may not disturb an EEOC decision with which the Board does not concur unless the EEOC's decision depends on civil service law for its support or is so unreasonable that it amounts to a violation of civil service law.  *Ignacio*, 30

M.S.P.R. at 486. The Special Panel's duty is to make a decision on whose positions should prevail while giving "due deference" to the respective expertise of the Board and the EEOC. 5 U.S.C. § 7702(d)(2)(b).

¶4      Based upon our review of the record, the Special Panel finds that the Commission did not rely on any civil service law, rule, regulation, and/or policy guidance in *Petitioner v. Department of Homeland Security*, EEOC Petition No. 0320110053, 2014 EEOPUB LEXIS 1810 (E.E.O.C. July 10, 2014). The Commission relied on the following in rendering its decision:  Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq.; EEOC regulations such as 29 C.F.R. § 1614.302, 29 C.F.R. § 1614.303, and 29 C.F.R. § 1614.305; EEOC federal sector case law; and its own enforcement guidance,[1] specifically the EEOC's Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, EEOC Notice 915.002 (Oct. 17, 2002). The Commission's decision does not rely on or cite to any civil service law, rule, regulation, or policy. Thus, the Commission did not incorrectly interpret any civil service law, rule, or regulation in its decision. In certifying this case, the Board failed to cite to a single specific civil service law, rule, regulation, or policy directive that the Commission incorrectly interpreted. We find that the Commission's decision was not so unreasonable that it amounts to a violation of civil service law. Furthermore, the Special Panel has determined that the Commission's decision does not constitute

---

[1] The EEOC has delegated the authority to issue appellate decisions in federal sector discrimination cases under 29 C.F.R. Part 1614 to its Office of Federal Operations (OFO). In a small number of cases, the full Commission will consider and vote on a decision. In those cases, the decision is issued through the Commission's Executive Secretariat rather than OFO. The *Bouffard v. Department of Homeland Security*, EEOC Appeal No. 0120065257, 2008 WL 276452 (E.E.O.C. Jan. 16, 2008), decision mentioned in this appeal was issued by OFO. *Petitioner v. Department of Homeland Security*, EEOC Petition No. 0320110053, 2014 EEOPUB LEXIS 1810 (E.E.O.C. July 10, 2014), was issued by the Executive Secretariat after a vote by the Commission.

an incorrect interpretation of any provision of any civil service law, rule, regulation, or policy directive. Accordingly, the Special Panel defers to the Commission and adopts its decision in the matter as our own.

## II. BACKGROUND AND PROCEDURAL HISTORY

¶5 On January 26, 2010, the appellant, Reynaldo Alvara, filed a mixed case[2] MSPB appeal. *See* Initial Appeal File (IAF). The appeal contested the appellant's removal from his position as a Customs and Border Protection Officer (CBPO) with the Department of Homeland Security, United States Customs and Border Protection (agency), for physical inability to meet the conditions of his employment due to a medical condition. Specifically, the agency found that the appellant could not perform all of the essential functions of his position. *Id.*

¶6 The appellant suffers from sleep apnea, a permanent condition which requires him to get 8 hours of nocturnal sleep. IAF, Tab 7b at 41, 80-88, 89-102. Prior to his termination, the appellant requested that the agency provide him with certain reasonable accommodations. The appellant requested a modified work schedule that would allow him to get nocturnal sleep each night, such as scheduling him to 12-hour shifts (6:00 a.m. to 6:00 p.m.; 8:00 a.m.to 8:00 p.m.; 10:00 a.m. to 10:00 p.m.).[3] *Id.* This request would have exempted the appellant from the agency's "graveyard" or overnight shift—the midnight to 8:00 am shift—and any overtime which would require him to work during those hours. In

---

[2] A mixed case appeal is an appeal filed directly to the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, disability, age, genetic information, or reprisal. 29 C.F.R. § 1614.302(a)(2).

[3] Prior to sometime in 2009, CBPOs at the Port of El Paso were assigned to work one of five different shifts: 6:00 a.m. to 2:00 p.m., 8:00 a.m. to 4:00 p.m., 2:00 p.m. to 10:00 p.m., 4:00 p.m. to 12:00 a.m. (midnight), and 12:00 a.m. (midnight) to 8:00 a.m. Hearing Compact Disk (HCD) (Michael John Brady). At the time of the hearing, Port of El Paso CBPOs were assigned to three shifts: 6:00 a.m. to 2:00 p.m., 2:00 p.m. to 10:00 p.m., and 10:00 p.m. to 6:00 a.m. *Id.*

his MSPB appeal, the appellant asserted that the agency discriminated against him in violation of Section 501 of the Rehabilitation Act, as amended, 29 U.S.C. § 791 et seq., when it denied his request for accommodation, and retaliated against him for engaging in protected equal employment opportunity activity. IAF, Tab 1.

¶7    On December 1, 2010, the MSPB administrative judge affirmed the agency's removal for physical inability to meet the conditions of his employment due to a medical condition. *See Alvara v. Department of Homeland Security*, MSPB Docket No. DA-0752-10-0223-I-1, Initial Decision (ID) (Dec. 1, 2010). The administrative judge found that the appellant was not a qualified individual with a disability entitled to a reasonable accommodation under the Rehabilitation Act because he could not perform the essential functions of his CBPO position with or without accommodation. *See* ID at 22. The ID relied heavily on *Bouffard v. Department of Homeland Security*, EEOC Appeal No. 0120065257, 2008 WL 276452 (E.E.O.C. Jan. 16, 2008), in determining that the appellant was not qualified, i.e., an individual with a disability entitled to an accommodation, because he could not perform the essential functions of his position. *See* ID at 22.

¶8    In *Bouffard*, the complainant, a seasonal CBPO, alleged he was subjected to discrimination on the basis of his disability (severe gastroesophageal reflux, Barrett's Esophagus) when the agency denied his request for a set work schedule without overtime. *Bouffard*, EEOC Appeal No. 0120065257, 2008 WL 276452, at *1-*2. An EEOC administrative judge found for the Department of Homeland Security. *Id.* Upon review, the EEOC OFO found that complainant did not fall within the protections of the Rehabilitation Act because he was not qualified. *Id.* Using the complainant's job description and an affidavit from the area port director, the OFO decision found that the agency established that the ability to work rotational shifts and the ability to work overtime were essential functions of the complainant's position. *Id.* But because the complainant could not perform

these essential functions, and because an agency is not required to eliminate essential functions as a reasonable accommodation, the OFO in *Bouffard* determined that the complainant was not qualified and was not entitled to relief.

¶9        In *Alvara*, the MSPB administrative judge relied on *Bouffard* in finding that the "ability to work rotational shifts and overtime was an essential function of the appellant's CBPO position."  ID at 22.  In a footnote, the administrative judge also addressed whether the agency could present sufficient evidence that the requested reasonable accommodation was an undue hardship.  ID at 22 n.25.  The administrative judge stated:

> Although I need not reach the issue of whether providing the appellant's requested accommodation would impose an undue hardship on the agency, in *Cyr v. Michael Chertoff, Secretary, Department of Homeland Security*, EEOC Appeal # 01A43015 (July 13, 2005), the EEOC found that providing a permanent day shift to an Immigration Inspector would impose an undue hardship on the agency.

ID at 22 n.25.

¶10        On February 18, 2011, the appellant filed a petition for review of the administrative judge's initial decision with the Board.  In his petition, the appellant argued that the administrative judge erred in finding that the ability to work the graveyard shift and substantial overtime are essential functions of his position and therefore that his inability to perform those shifts precludes him from being qualified.  Petition for Review File, Tab 5 at 13-29.  The appellant also argued that the agency failed to establish that his request for accommodation would pose an undue hardship for the agency.  *Id.* at 29-32.

¶11        On August 17, 2011, the Board affirmed, as modified, the administrative judge's initial decision.  *Alvara v. Department of Homeland Security*, 116 M.S.P.R. 627 (2011).  The Board also relied on the EEOC's decision in *Bouffard* in affirming the administrative judge's initial decision.  In relying on *Bouffard*, the Board opined:  "We note that the Board generally defers to the EEOC on issues of substantive discrimination law unless the EEOC's decision rests on civil

service law for its support or is so unreasonable that it amounts to a violation of civil service law." *Alvara*, 116 M.S.P.R. 627, ¶ 8. The Board found:

> Accordingly, because the *Bouffard* decision involves an issue of substantive discrimination law and is neither based on civil service law or is so unreasonable as to amount to a violation of civil service law, we will defer to the EEOC's determination that the agency is not required to accommodate a disabled CBPO by granting a request not to work rotational shifts and overtime.

*Id.* The Board also stated, "Because we agree with the administrative judge's findings, it is unnecessary to address the Agency's challenge to her alternative finding as to undue hardship, which is essentially dicta." *See Alvara*, 116 M.S.P.R. 627, ¶ 14.

¶12 On September 16, 2011, the appellant filed a petition to the EEOC seeking review of the Board's final order under 5 U.S.C. § 7702(b)(2).

¶13 On July 10, 2014, the Commission issued a decision in which the Commission differed with the Board's finding that the agency did not discriminate against the appellant on the basis of disability. In so ruling, the EEOC partially repudiated *Bouffard*. The EEOC reasoned: "Because *Bouffard* did not adhere to our Enforcement Guidance and precedential federal sector cases in its analysis of the essential functions of a part-time Customs and Border Protection Officer, we find that it was wrongly decided on that point. We therefore overturn that portion of the decision." Commission Decision, 2014 EEOPUB LEXIS 1810, at *13. The Commission explained that, for purposes of the Rehabilitation Act, the essential functions of a Customs and Border Protection Officer may include such duties as inspecting travelers; examining applicants for immigration privileges and benefits; seizing suspect property; and detaining people engaging in suspicious activity. *Id.* The Commission ruled that the appellant's requested accommodations sought to modify his schedule and attendance and therefore did not affect the essential functions of his position. The EEOC also reasoned that:

> [C]onsidering attendance as an essential job function as opposed to a method by which essential functions are accomplished, leads to the perverse and unacceptable conclusion that any employee with disability-related absences is an unqualified individual and, therefore, unable to claim the protections of the Rehabilitation Act.

*Id.* at \*11.

¶14        The Commission also determined that the agency did not establish that the requested reasonable accommodation would be an undue hardship.  The EEOC held:  "Based on these facts, we find that allowing Petitioner, as one of 700 officers, to work between 6:00 a.m. and midnight would not cause an undue hardship at this particular facility." *Id.* at \*16.  The Commission concluded that the agency erred when it:  (1) denied petitioner's reasonable accommodation request to work between the hours of 6:00 a.m. and midnight; and (2) removed him.  *Id.*  The Commission then referred the matter to the Board for further consideration pursuant to 5 U.S.C. § 7702(b)(5)(B) because the EEOC's decision differed from the Board's decision.  *Id.* at \*19.

¶15        The Board rejected the Commission's decision and certified this matter for the Special Panel.  The Board recognized that "under the mixed case system governed by 5 U.S.C. § 7702, the Board generally must defer to the EEOC's interpretation of discrimination law." *Alvara*, 121 M.S.P.R. 453, ¶ 11.  However, the Board reasoned:

> The EEOC decision, to which we are asked to defer, is unreasonable both from a legal and a management/operational perspective.  At its core, the EEOC decision fundamentally addresses not an interpretation of discrimination law, but rather an agency's ability to determine the essential functions of any given position, in this case, a law enforcement officer position.

*Id.*, ¶ 8.  In doing so, the Board reversed course from its original decision, in which it deferred to the EEOC's interpretation of the anti-discrimination statute.  The Board concluded:

> [A]s a matter of law the EEOC decision is based upon an incorrect interpretation of civil service law, rule, or regulation.  In the alternative, we find that the evidence in the record does not support

the EEOC decision, and that the EEOC decision is so unreasonable that it amounts to a violation of civil service law, rule, or regulation. Thus, the Board cannot agree with the EEOC decision. We therefore REAFFIRM our prior decision. *See* 5 U.S.C. § 7702(c)(2); 5 C.F.R. § 1201.162(a)(2).

*Alvara*, 121 M.S.P.R. 453, ¶ 17.

## III.   STANDARD OF REVIEW

¶16     The Special Panel's scope of review is described in 5 U.S.C. § 7702(d)(2). The Special Panel must first determine whether the issues fall within the purview of civil service law or anti-discrimination law. The Special Panel, in ultimately deciding the issues, is required to give due deference to the respective expertise of the MSPB and EEOC. 5 U.S.C. § 7702(d)(2)(B). As set forth in *Ignacio*:

> The balance struck by § 7702 is really quite simple. The EEOC review is to ensure that the MSPB refrains from basing its decisions on incorrect interpretations of discrimination law. The MSPB certification to the Special Panel, on the other hand, ensures that the EEOC may not err by misinterpreting civil service law. The Panel will review the record, according due deference to the expertise of each agency to determine whether the substance of the EEOC's decision with which the MSPB disagrees was actually predicated on a misinterpretation of civil service law.

*Ignacio*, 30 M.S.P.R. at 481.

¶17     As set forth in *Ignacio* and its progeny, the Special Panel's obligation to defer to each agency's expertise will result in one of three possible outcomes:

1.   The Panel will overrule the MSPB and defer to the EEOC where: (a) the EEOC decision does not constitute an incorrect interpretation of a provision of civil service law, rule, regulation or policy directives; and (b) the EEOC's decision that the MSPB's interpretation of discrimination law was incorrect has a reasonable basis.

2.   The Panel will defer to the MSPB where: (a) the EEOC decision as found by MSPB incorrectly interpreted a provision of civil service law, rule, regulation or policy directive; and (b) the EEOC's conclusion in its decision that MSPB's interpretation of discrimination law was incorrect lacks a reasonable basis.

3. The Panel will reach a decision addressing the merits of the case only where: (a) the decision of the MSPB that the EEOC decision incorrectly applied a provision of civil service law, rule, regulation or policy directive is correct, and (b) the decision of the EEOC that the MSPB, in its initial decision, incorrectly interpreted and applied discrimination law is correct, thus leaving the merits of the case to be correctly decided under civil service and discrimination law by the Special Panel.

*Id.* at 483. In this case, the Panel overrules the MSPB and defers to the EEOC because: (1) the EEOC decision does not constitute an incorrect interpretation of a provision of civil service law, rule, regulation, or policy directive; and (2) the EEOC's decision that the MSPB's interpretation of discrimination law was incorrect has a reasonable basis.

¶18 The dissent, citing only dissenting opinions from previous Special Panel decisions and raising for the first time an issue that was not argued by either party before the Special Panel, argues that the "analytical framework adopted by the majority in *Ignacio* does not comport with the plain language of the statute and fails to give proper effect to the Special Panel's statutory duty to decide the issue in dispute." Dissenting Opinion, ¶ 4. However, the principal of stare decisis supports the Special Panel's decision to follow *Ignacio*. The principles set forth in *Ignacio* have been followed for nearly 30 years. *Ignacio's* deferential standard of review is based on 5 U.S.C. § 7702(d)(2)(b), which requires the Special Panel to give "due deference" to the expertise of the MSPB with regard to civil service principles, and of the EEOC regarding discrimination law. We shall continue to follow *Ignacio's* sound principles. The dissent also argues that "[i]ndeed it is absurd to decline to reach the merits of this dispute on the ground that the EEOC did not cite any provision of civil service law given that its decision here is so incompatible with basic principles of civil service law." Dissenting Opinion, ¶ 6. The dissent's argument ignores the fact that 5 U.S.C. § 7702(d)(2)(b) requires the Special Panel to give "due deference" to the EEOC's interpretation of discrimination law. The dissent's argument also disregards the failure of the

Board's certification order to set forth a specific argument as to how the Commission's decision is incompatible with basic principles of civil service law. Thus, the Special Panel has no grounds to address the merits of the underlying decision.

## IV.   ANALYSIS

¶19     The Board's certification to the Special Panel lacked a specific and thoroughly analyzed explanation of how the Commission's decision incorrectly interprets a specific civil service law.  The Board's certification also failed to adequately explain how the Commission's decision is unsupported by the record and is so unreasonable that it amounts to a violation of civil service law.  The dissent seeks to get around this flaw by explaining in more detail its view of the reasoning behind the Board's certification order.  However, such after-the-fact justification by one member of the Board cannot save the Board's certification order.

### A.  Civil Service Law

¶20     Although the Board held that the Commission's decision constitutes an incorrect interpretation of civil service, law, rule or regulation, it never precisely identified its own interpretation of what constitutes a "civil service law, rule and regulation."  Before moving forward with the analysis of the Board's decision it is important to set forth exactly what a civil service law, rule, or regulation is, especially in relation to the Rehabilitation Act.

¶21     The Civil Service Reform Act defines "civil service" as "consist[ing] of all appointive positions in the executive, judicial, and legislative branches of the Government of the United States, except positions in the uniformed services." 5 U.S.C § 2102.  Title 5 of the United States Code outlines the government's organization and employees.  However, Title 5 does not expressly define "civil service law."  "Thus, the question whether civil service law includes employment discrimination laws which have wider application beyond government

employment can be answered only after an examination of the statutory context and the underlying policies." *King v. Lynch*, 21 F.3d 1084 (Fed. Cir. 1994).

¶22    Pursuant to 5 U.S.C. § 7702(a)(1)(B)(i)-(v), discrimination laws are under the jurisdiction of the EEOC:

> (a)(1) Notwithstanding any other provision of law, and except as provided in paragraph (2) of this subsection, in the case of any employee or applicant for employment who—
>
> (A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and
>
> (B) alleges that a basis for the action was discrimination prohibited by—
>
> (i) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16),
>
> (ii) section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206 (d)),
>
> (iii) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791),
>
> (iv) sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), or
>
> (v) any rule, regulation, or policy directive prescribed under any provision of law described in clauses (i) through (iv) of this subparagraph, the Board shall, within 120 days of the filing of the appeal, decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701 of this title and this section.

5 U.S.C. § 7702(a)(1)(B)(i)-(v). Under section 7702(b)(3)(B)(i), when the case is appealed to the Commission, it is the Commission's duty to decide whether the MSPB has incorrectly interpreted the provisions of discrimination law listed in subsections (a)(1)(B)(i)-(iv). By process of elimination, therefore, these authorities cannot be the "civil service laws, rules, or regulations" that are referred to in the statute.

¶23    *King v. Lynch*, 21 F.3d 1084 (Fed. Cir. 1994), confirms this view. In *King*, the Director of the Office of Personnel Management argued that the MSPB misinterpreted civil service law and regulation affecting personnel management and that the Board's decision would have a substantial impact on civil service

law, rule, regulation, or policy directives. Specifically, the Director asserted that the MSPB erred in interpreting the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulation 29 C.F.R. § 1613.702. *King*, 21 F.3d at 1088. The court stated:

> Section 7702 of Title 5 sets forth the appeal procedures for cases where there is an alleged violation of certain discrimination laws. That section distinguishes between discrimination laws and civil service laws. *Compare* 5 U.S.C. § 7702(b)(3)(B)(i) (referring to the discrimination laws set out in subsection (a)(1)(B)) *with id.* § 7702(c)(2) (referring to "civil service laws, rules, regulations, and policy directives"). Cases in which certain unlawful discrimination is alleged, although initially decided by the MSPB, may at the appellant's option be reviewed administratively by the EEOC following an adverse MSPB decision. When that occurs, as in this case, § 7702(b) gives the EEOC the primary role in interpreting the pertinent discrimination law and regulation (in this case a regulation promulgated by the EEOC) and under § 7702(c) the MSPB has that role in interpreting "any civil service law, rule, or regulation." *See* 5 U.S.C. § 7702(d)(2)(B) (requiring deference to the "respective expertise of the Board and [EEOC]"). The Rehabilitation Act is listed as one of the discrimination statutes subject to this procedure, *see id.* § 7702(a)(1)(B)(iii), and thus is distinguished from civil service laws referred to in § 7702(c).

*King*, 21 F.3d at 1088.

¶24     The court concluded that the Rehabilitation Act and the other discrimination laws, although applicable to federal employers, have broader application and are not themselves civil service laws. *Id.* The court also reasoned that "[t]he Senate Report and statutory scheme for dealing with discrimination issues demonstrates that Congress intended that there be a consistent interpretation of these laws whether their alleged violation arises within or without the federal government." *Id.*

¶25     The Civil Service Reform Act of 1978 states that civil service law should not abridge discrimination law. Title I of the Civil Service Reform Act, Section 2302(d), provides:

(d) This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to any employee or applicant for employment in the civil service under-,

(1) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), prohibiting discrimination on the basis of race, color, religion, sex, or national origin;

(2) sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), prohibiting discrimination on the basis of age;

(3) under section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d)), prohibiting discrimination on the basis of sex;

(4) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791), prohibiting discrimination on the basis of handicapping condition; or

(5) the provisions of any law, rule, or regulation prohibiting discrimination on the basis of marital status or political affiliation.

*See* 5 U.S.C. § 2302(d).

¶26    The statutory language, legislative history and case law recognize that interpretation of a civil service law, rule, or regulation does not encompass interpretation of statutes and regulations relating to employment discrimination. Thus, the Commission's decision did not misinterpret a civil service, law, rule, regulation, or policy directive when it relied strictly upon the Rehabilitation Act and its implementing regulations and case law.

B.  The Commission Decision Did Not Constitute an Unreasonable Interpretation of Civil Service Law

¶27    The Board interpreted the Commission's decision as encroaching on an agency's "management/operational perspective" and discretion to determine the tasks, duties and responsibilities of any given position, in this case, a law enforcement position. *Alvara*, 121 M.S.P.R. 453, ¶8.  The Board misinterpreted the Commission's decision.  The dissent argues that "[t]hus, we may reasonably interpret 'civil service law' in this context as encompassing the judicial and administrative decisions and legal principles that govern the operation of the federal civil service in addition to applicable statutory provisions."  Dissenting

Opinion, ¶ 7. The dissent's interpretation would effectively result in any EEOC decision that conflicted with any part of an MSPB decision triggering Special Panel review of the merits. That interpretation is clearly contrary to the intent of the statute.

¶28        The Board's misinterpretation of the Commission's decision is illustrated by its citation to random statutes that pertain to law enforcement officers. The Board states:

> Under civil service law, CBPOs are classified as law enforcement officers. They are charged with the safety and security of the American people, protecting the country's borders from terrorism, intercepting the smuggling of humans, drugs and other contraband, preventing illegal migration and the entry of agricultural pests, and facilitating the flow of legitimate trade and travel. The special nature of these jobs is why law enforcement officers are treated differently from other civil servants in everything from essential functions to retirement calculations. *See, e.g.*, 5 U.S.C. § 8331(2); 5 U.S.C. § 8401(17) (definitions of "law enforcement officer" for retirement purposes under the Civil Service Retirement System and the Federal Employees' Retirement System, respectively); 5 U.S.C. § 3307 (providing that agencies may set a maximum age limit for an original appointment to law enforcement officer positions such as CBPOs).

*Id.*, ¶ 13. None of the statutes cited in the certification order pertains to the essential functions of a CBPO officer. The cited statutes are silent on "essential functions," and do not support the Board's belief that agencies enjoy unfettered discretion to identify "essential functions." Instead, two of the cited provisions relate to retirement for law enforcement officers and the third establishes a maximum age for hiring law enforcement officers.

¶29        The Board further misinterprets the Commission's decision when it states, "The EEOC now asks us to second guess the employing agency in what is an essential function of this position. We refuse to do so. To that end, we note that the Americans with Disabilities Act does not define the term 'essential functions.'" *Id.*, ¶ 11. The Board holds that the Commission's decision infringes

upon the agency's right and authority to establish the terms and conditions of employment and to determine the essential functions of a position. The Board misreads the Commission's decision.

¶30 Federal agencies do enjoy wide discretion in assigning work, duties and responsibilities to personnel and in determining how agency operations will be conducted, in accordance with applicable employment discrimination laws. *See, e.g.*, 5 U.S.C. § 7106. The dissent argues that "5 U.S.C. § 7106 gives management exclusive authority, subject to undertaking permissive bargaining, with regard to assigning work, determining the personnel by which the agency operations shall be conducted, and taking disciplinary actions." Dissenting Opinion, ¶ 16.

¶31 However, nothing in the Commission's decision restricts or prohibits any agency's managerial and operational prerogatives or any agency's right to establish the terms and conditions of employment. The Board errs where it concludes that under the Rehabilitation Act and the ADA, management's evaluation of a position's "essential functions" is dispositive. Management can assign duties but cannot determine as a matter of law whether those duties are essential functions. The ADA[4] states:

> The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this

---

[4] The Rehabilitation Act, 29 U.S.C. § 791 et seq., which applies to the federal government, was amended in 1992 to apply the standards in the ADA to complaints of discrimination by federal employees or applicants for employment. The standards set forth in the ADA and its implementing regulations have thus been incorporated into the Rehabilitation Act. *Caver v. Department of Navy*, EEOC Appeal No. 01994882, 2001 WL 1104094 (E.E.O.C. Sept. 7, 2001).

> description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8). The inquiry required to define a position's "essential functions" under the Rehabilitation Act is to be performed by the finder of fact—not the employer. The employer's judgment as to what functions are essential is only one factor taken into consideration by the fact-finder who will ultimately determine the essential functions of a position. That fact-finder is the EEOC. The EEOC has final authority to determine what an "essential function" is—not the agency. Further, consistent with the authority granted to the EEOC by Congress, the EEOC has the authority to define the limits of "essential functions" in both regulation and guidance.[5]

¶32      Thus, the MSPB erred when it held that the Commission interfered with the agency's authority to determine the essential functions of the appellant's position. As explained further infra, the Commission's decision did not repudiate the agency's judgment. Rather, it disagreed with the agency on the legal analysis required by the Rehabilitation Act when evaluating scheduling and work requirements. It corrected the agency's legal error of characterizing working rotating shifts and overtime (a method of performing the functions of a job) as essential functions of the CPBO position and held that if the agency believed that

---

[5] The dissent notes that the MSPB administrative judge relied on the EEOC's own regulations in determining that working overtime and a rotating shift were essential functions of the CPBO position. Reliance on the factors set forth in the regulations for determining essential functions would, indeed, have been both appropriate and acceptable if working overtime and a rotating shift could, in fact, be essential functions under the terms of the Rehabilitation Act. The EEOC has said in Enforcement Guidance, and reaffirmed in the case before us, that these are not functions in themselves. Therefore the essential function analysis was not proper in this case. The dissent goes further and says that the Enforcement Guidance that states this position is itself not consistent with the EEOC's regulations and should be disregarded by the Special Panel. This is just another attempt to have the Special Panel throw out the standards of *Ignacio* and examine the issues in the case without the required "due deference" to the expertise of the EEOC in discrimination law and the MSPB in matters of civil service law.

it could not provide a scheduling accommodation to the complainant it needed to show that such accommodations imposed an undue hardship on agency operations or finance.

¶33    In so doing, the Commission interpreted its own regulations, 29 C.F.R. § 1630.2(m); relied on its own federal sector case law, *e.g.*, *Cottrell v. U.S. Postal Service*, EEOC Appeal No. 07A00004, 2001 WL 1218254 (E.E.O.C. Feb. 2, 2001); and used its own Enforcement Guidance, EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, EEOC Notice 915.002 (Oct. 17, 2002). *See* Commission Decision, 2014 EEOPUB LEXIS 1810, at *11-*12. The Commission also relied upon its own case law and Enforcement Guidance in finding that the agency failed to show that modifying the appellant's work schedule would cause an undue hardship. *Id.* at *19. Thus, the Commission relied strictly on discrimination law, not civil service law, in resolving the issues in dispute in this case.

¶34    The Commission's decision only relied upon the anti-discrimination statutes, EEOC regulations, EEOC case law, and EEOC enforcement guidance to render its decision. Whether an employee is able to perform the functions of a position and whether an agency considered a reasonable accommodation are clearly determinations under discrimination law, not civil service law. It is the EEOC, not the MSPB, that has primary authority to determine this issue, and the Special Panel is required to give the EEOC due deference. The EEOC did not infringe upon or incorrectly interpret civil service rules or regulations.

¶35    The dissent argues that the Commission's "categorical exclusion of certain terms and conditions of employment from being considered essential to the effective performance of the position is fundamentally at odds with the Board's jurisprudence concerning adverse actions based on physical inability to perform." Dissenting Opinion, ¶ 12. The Commission's decision, however, is an interpretation of discrimination law—not the Board's jurisprudence concerning

adverse actions based on physical inability to perform. In fact, the dissent's basic point, that the EEOC should not categorically exclude attendance issues from the definition of "essential functions," is in reality just a disagreement with the EEOC's interpretation of discrimination law. The Special Panel cannot give "due deference" to the EEOC on discrimination law and, at the same time, overturn that interpretation based only on the fact that the MSPB disagrees with it. There must be some explicit conflict with civil service law, which has not been shown.

## C. The Commission Decision Is Supported by the Record

¶36    The Board failed to specifically explain and analyze how the Commission's decision is unsupported by the record. The Special Panel should not and will not guess what the Board means in holding that the Commission's decision is unsupported by the record.

## D. The EEOC's Decision Is Not Unreasonable

¶37    The Board also failed to specifically explain how the EEOC decision was so unreasonable that it amounts to a violation of civil service law, rule, or regulation. The dissent argues that "the EEOC's decision effectively eviscerates the authority of federal agencies, in the first instance, from ever establishing time and attendance requirements as essential terms and conditions of employment." Dissenting Opinion, ¶ 25. The dissent's interpretation of the Commission's decision is not accurate. The Commission's decision does not say that attendance can never be an important term and condition of a position. In fact, the Commission's decision concludes that accommodations based on attendance are not required if the agency establishes that they pose an undue burden on its operations. The Special Panel finds that the Commission's position in this regard was reasonable.

¶38    This case is unique because the Commission's decision overturned its own legal precedent and a specific portion of *Bouffard*. The administrative judge and the Board relied heavily upon *Bouffard* in their decisions. However, the

Commission is well within its authority to overturn a decision rendered by the EEOC's OFO.

¶39     The Commission relied upon the Rehabilitation Act, an anti-discrimination statute—not a civil service statute. The Commission relied upon its own case law and its own enforcement guidance in rendering its decision. In conducting its analysis of whether the appellant was entitled to a reasonable accommodation, the Commission reviewed *Bouffard*. The Commission determined that *Bouffard*, or at least the portion heavily relied upon by the Board in finding that "the essential functions of a Customs and Border Protection Officer include working rotating shifts and significant amounts of overtime," was wrongly decided. Commission Decision, 2014 EEOPUB LEXIS 1810, at *6. The Commission found that working substantial overtime and/or the graveyard shift were the methods by which an individual performed the job's essential functions, not the essential functions themselves. *Id.*

> In fact, considering attendance as an essential job function as opposed to a method by which essential functions are accomplished, leads to the perverse and unacceptable conclusion that any employee with disability-related absences is an unqualified individual and, therefore, unable to claim the protections of the Rehabilitation Act. *See e.g.*, Cottrell v. U.S. Postal Serv., EEOC Appeal No. 07A0004 (Feb. 2. 2001); McCullough v. U.S. Postal Serv., EEOC Request No. 05950529 (Apr. 25, 1996); Ruiz v. U.S. Postal Serv., EEOC Request 05880859 (May 21, 1990).

*Id.* at *4. The Commission cited to its Enforcement Guidance in reasoning:

> Employers should carefully assess whether modifying the hours could significantly disrupt their operations -- that is, cause undue hardship -- or whether the essential functions may be performed at different times with little or no impact on the operations or the ability of other employees to perform their jobs.

*Id.*, citing to EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, EEOC Notice 915.002, Question 22 (Oct. 17, 2002).

¶40     The Board failed to clearly explain why it was unreasonable for the Commission to decide that the instant case should have been analyzed through the lens of undue hardship instead of an essential function analysis.

¶41     There are several steps that an agency must take in analyzing a request for a reasonable accommodation. The Rehabilitation Act requires federal agencies to provide reasonable accommodations to qualified individuals with disabilities who are employees or applicants for employment, unless to do so would cause an undue hardship. Once an agency finds that the employee requesting the reasonable accommodation has a disability, it must determine whether the employee is "qualified."

¶42     An individual with a disability is qualified if the individual "satisfies the requisite skill, experience, education, and other job-related requirements of the employment positions such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). Essential functions are the duties of a job, that is, the outcomes that must be achieved by someone in that position. *Complainant v. U.S. Postal Service*, EEOC Appeal No. 0120080613, 2013 WL 8338375, at *7 (E.E.O.C. Dec. 23, 2013).

¶43     The Commission determined:

> Performing certain job functions sometimes requires a person's presence at the worksite. But the fact that attendance can be a condition precedent to performing a function does not render it a job function in and of itself. Job functions are the duties that a person must perform or the outcomes that must be achieved by the person in the job. Attendance and timing are neither duties nor outcomes by themselves.

Commission Decision, 2014 EEOPUB LEXIS 1810, at *10. The Commission found that since there was no question that the appellant could perform the duties of a CBPO when at work, he was qualified. *Id.* at *14. The next step in the agency's analysis is whether the appellant's requested reasonable accommodation posed an undue hardship. An employer does not have to provide a reasonable

accommodation that would cause an "undue hardship" to the employer's operation.

¶44    Several factors must be considered in determining whether a requested reasonable accommodation is an undue hardship. *Id.* at \*15-\*16. The Commission's determination that the agency did not meet its burden in substantiating its undue hardship argument is reasonable. The Commission found that the agency made generalized conclusions and assessments supporting its view that providing a reasonable accommodation would result in an undue hardship. *Id.* at \*18. It is not sufficient to merely state in a conclusory manner that an accommodation would be an undue hardship. The undue hardship burden is a "rigorous one" and the agency must "prove convincingly" that such a hardship actually exists. *Swafford v. Tennessee Valley Authority*, EEOC Appeal No. 01831944, 1984 WL 484605 (May 21, 1984). The agency bears the burden of proof to show not only that an accommodation would impose an undue hardship, but that the agency actually considered the accommodation. *Id.* In the instant case, it was not unreasonable for the Commission to find that the agency did not meet its burden.

¶45    In summary, the MSPB disagrees with the EEOC. However, it failed to specifically explain how the Commission's decision misinterprets civil service law or how the decision is so unreasonable that it amounts to a violation of civil service law. The MSPB sought to transform this controversy into a civil service matter by contending that the EEOC violated civil service principles. No matter how vigorously the MSPB characterizes this case as a violation of civil service law, the Commission's decision was based on its interpretation of discrimination law. The Commission's interpretation of discrimination law and their decision are reasonable. As far as this Special Panel's review is concerned, that is the end of the story.

## V. CONCLUSION

¶46      The Special Panel defers to the EEOC and adopts the EEOC's decision as the decision of the Special Panel.  Pursuant to 5 U.S.C. § 7702(d)(3), this decision is referred to the Board which shall remand the case to the administrative judge in order to conduct a compensatory damages hearing, order the agency to take appropriate action including cancellation of the removal and the award of all payments and benefits to which the appellant is entitled as a result of this decision.  Enforcement of this decision is the responsibility of the Board.  The parties are notified that this decision is reviewable pursuant to 5 U.S.C. § 7702(d)(2)(A).


_____
Dennis P. Walsh
Chairman
Special Panel



_____
Chai R. Feldblum
Commissioner
Equal Employment Opportunity Commission

in

*Reynaldo Alvara v. Department of Homeland Security*

MSPB Docket No. DA-0752-10-0223-E-1
EEOC Petition Number 0320110053

Before the Special Panel

¶1      For the reasons explained more fully below, I respectfully dissent from the Opinion of the majority of the Special Panel (Spec. Pan. Op.) because I believe that the Equal Employment Opportunity Commission's (EEOC or Commission) decision constitutes a misinterpretation of long-standing Merit Systems Protection Board (MSPB or Board) precedent governing the adjudication of an adverse action based on a charge of physical inability to perform.  It also constitutes a misinterpretation of various provisions embedded throughout Title 5 of the U.S. Code as well as in the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (CSRA).  I also believe that the EEOC's determination that the MSPB misinterpreted any provision of discrimination law has no reasonable basis.  However, perhaps even more fundamentally, I disagree with the Special Panel's decision not to reach the merits of the dispute between the MSPB and EEOC regarding whether time and attendance requirements may ever be deemed essential functions of a position, an issue which has clear implications under both civil service and discrimination law.  Under the statutory scheme set forth in 5 U.S.C. § 7702(c)(2), it is precisely under such circumstances that Congress anticipated that the Special Panel would resolve the dispute.  Instead, the majority adopts the same deferential posture toward the EEOC that has typified Special Panel proceedings in the past and which, as explained below, stems from the misguided analytical approach developed by the first Special Panel in *Ignacio v. U.S. Postal Service*, 30 M.S.P.R. 471, 477 (Spec. Pan. 1986).

A. The Special Panel Process

¶2    The CSRA provides a somewhat complex process for resolving federal employee challenges to adverse actions that are appealable to the Board, wherein the appellant raises, as an affirmative defense, that a basis for the action was unlawful discrimination prohibited under the various statutes identified in 5 U.S.C. § 7702(a)(1)(B)(i)-(v). *See generally* 5 U.S.C. § 7702. Specifically, upon issuance of a Board decision, the appellant may petition the EEOC, under 5 U.S.C. § 7702(b)(1), to "consider" the Board's decision and either concur in it or "issue in writing another decision which differs from the decision of the Board to the extent that the Commission finds that, as a matter of law--(i) the decision of the Board constitutes an incorrect interpretation of any provision of any law, rule, regulation, or policy directive referred to in subsection (a)(1)(B)" of section 7702. 5 U.S.C. § 7702(b)(3).[1] The Board thereafter has the option of either concurring and wholly adopting the EEOC's decision, or reaffirming the Board's initial decision upon finding, as a matter of law, that the EEOC's decision "constitutes an incorrect interpretation of any provision of any civil service law, rule, regulation, or policy directive." 5 U.S.C. § 7702(c)(2). If the Board reaffirms its initial decision under section 7702(c)(2), the CSRA requires that the matter "*be immediately* certified" to a Special Panel pursuant to 5 U.S.C. § 7702(d)(1) (emphasis added).

¶3    As a threshold matter, this statutory scheme plainly contemplates that the Special Panel's jurisdiction is established upon issuance of a Board decision under section 7702(c)(2), i.e., when the Board rejects the EEOC's decision and

---

[1] The CSRA further provides that the EEOC may also differ with the MSPB upon finding, as a matter of law, that the Board's decision as to the appellant's discrimination claim is not supported by the evidence in the record as a whole. 5 U.S.C. § 7702(b)(3)(B)(ii). Similarly, the Board may reaffirm its decision upon finding as a matter of law that the EEOC's decision as to civil service law is not supported by the evidence in the record as a whole. 5 U.S.C. § 7702(c)(2)(B).

reaffirms its original opinion. In *Ignacio*, 30 M.S.P.R. at 477, the first Special Panel convened under the CSRA cited the plain language of the statute in finding that "[o]nce a subsection (c)(2) finding is made, certification is automatic, leaving the Panel with no choice but to accept jurisdiction." It further determined that the CSRA's legislative history supported the view "that jurisdiction is automatically conferred by the fact of certification, leaving the Panel with the responsibility of resolving the issues in dispute." *Id.* As such, contrary to the view expressed by the amicus curiae to the effect that the Special Panel's jurisdiction turns on whether the Board in fact found that the EEOC misapplied civil service law, this Special Panel's jurisdiction to resolve the issues in dispute here automatically attached, as a matter of law, upon the Board's issuance of its Opinion and Certification Order on August 13, 2014. *See Ignacio*, 30 M.S.P.R. at 478 n.5 ("The Panel is granted no authority to decline or grant jurisdiction based on the propriety of the MSPB's certification.")

¶4    Once jurisdiction attaches, the Special Panel has a statutory obligation to "decide the issues in dispute." 5 U.S.C. § 7702(d)(2)(A). However, the analytical framework adopted by the majority in *Ignacio* does not comport with the plain language of the statute and fails to give proper effect to the Special Panel's statutory duty to decide the issue in dispute.[2] *See Boots v. U.S. Postal Service*, 100 M.S.P.R. 513, 526 (Spec. Pan. 2005) (Chairman McPhie, dissenting); *Ignacio*, 30 M.S.P.R. at 487 (Chairman Ellingwood, dissenting). Specifically, the *Ignacio* Panel determined that it would not reach the merits of the dispute, but rather defer to the EEOC where (a) the EEOC's decision does not constitute an incorrect interpretation of a provision of civil service law, rule, regulation, or policy directive; and (b) the EEOC's decision that the MSPB's

---

[2] Previous Special Panel decisions are not controlling in our present deliberations. *See Boots v. U.S. Postal Service*, 100 M.S.P.R. 513, 518 (Spec. Pan. 2005) (viewing *Ignacio* only as "guiding precedent").

interpretation of discrimination law was incorrect has a reasonable basis. *Ignacio*, 30 M.S.P.R. at 483. Conversely, the Panel would defer to the MSPB (a) where the EEOC decision incorrectly interpreted a provision of civil service law, rule, regulation, or policy directive; and (b) the EEOC's conclusion that the MSPB's interpretation of discrimination law was incorrect lacks a reasonable basis. *Id.* That Panel concluded that it would reach the merits of the dispute only where (a) the decision of the MSPB that the EEOC decision incorrectly applied a provision of civil service law, rule, regulation, or policy directive is correct; *and* (b) the decision of the EEOC that the MSPB, in its initial decision, incorrectly interpreted and applied discrimination law is correct. *Ignacio*, 30 M.S.P.R. at 483.

¶5    Apart from the patently lopsided nature of *Ignacio's* convoluted scheme, the fact remains that the issue presented to this Special Panel reflects precisely the type of conflict between civil service and discrimination law that Congress empowered the Special Panel to resolve. Here, the MSPB correctly applied its longstanding precedent under civil service law in sustaining the appellant's removal based on a charge of physical inability to perform the essential functions of his position and denied his claim that his removal was based on disability discrimination. In its decision, eschewing the time-honored practice of applying a case-by-case approach, the EEOC announced a categorical exclusion of time and attendance requirements from being deemed "essential functions" under the Rehabilitation Act. The EEOC's decision effectively ignores, or worse still, nullifies management's well-established authority—under both the statutory provisions of the CSRA as well as decades of Board precedent interpreting those provisions—to take an adverse action when an employee fails to meet time and attendance requirements. As such, the Special Panel should have reached the merits of the dispute and determined whether civil service law or discrimination law was controlling on the question of whether time and attendance could ever be deemed essential functions of a position.

¶6        Instead, this Special Panel punts on this important question, deferring to the EEOC because the EEOC relied solely on the Rehabilitation Act in issuing its decision.  This argument exactly captures the error in the *Ignacio* analysis.  The CSRA requires only that the MSPB conclude that the EEOC's "decision *constitutes* an incorrect interpretation of any provision of any civil service law, rule, regulation, or policy directive."  5 U.S.C. § 7702(c)(2) (emphasis added). Yet, the *Ignacio* Panel inexplicably interpreted this as requiring, alternately, that the EEOC decision *applied* a civil service law, 30 M.S.P.R. at 483, or *depended* on civil service law for its support, *id.* at 486.  This has led to the incongruous result that where, as here, the issue of essential functions is clearly one that arises under both civil service and discrimination law,[3] the EEOC can unilaterally command deference and preclude the Special Panel from even reaching the merits of a dispute simply by avoiding any explicit reference to civil service law and framing its decision solely in terms of discrimination law, as it did here.  Thus, the fact that the EEOC did not explicitly apply or rely on civil service law to support its categorical exclusion of time and attendance requirements from essential functions should not operate to trigger whatever deference is due the EEOC or to warrant overruling the MSPB's decision in this case.  Indeed, it is absurd to decline to reach the merits of this dispute on the ground that the EEOC did not cite any provision of civil service law given that its decision here is so incompatible with basic principles of civil service law.

B. The EEOC's Decision Constitutes an Incorrect Interpretation of Civil Service Law

¶7        Even if this Special Panel were to adopt *Ignacio's* deferential framework, however, we should then defer to the MSPB and leave its decision intact because the EEOC's decision constitutes an incorrect interpretation of civil service law.

---

[3] The fact that "essential functions" is an issue in discrimination law does not, therefore, preclude it from implicating basic civil service law.

*See Ignacio*, 30 M.S.P.R. at 483. The CSRA does not expressly define "civil service law." *Horner v. Schuck*, 843 F.2d 1368, 1371 (Fed. Cir. 1988). Nonetheless, it does provide that, for purposes of Title 5, "civil service" consists of all appointive positions in the executive, judicial, and legislative branches of the Government of the United States . . . ." 5 U.S.C. § 2101(1). Furthermore, *Black's Law Dictionary* defines "law" as "the aggregate of legislation, judicial precedent, and accepted legal principles; the body of authoritative grounds of judicial and administration action." *Black's Law Dictionary* 889 (7th ed. 1999). Thus, we may reasonably interpret "civil service law" in this context as encompassing the judicial and administrative decisions and legal principles that govern the operation of the federal civil service in addition to applicable statutory provisions.[4]

*1. The EEOC's Decision Constitutes a Misinterpretation of Longstanding Board and Judicial Decisions Arising under the CSRA*

¶8    In its decision, the EEOC categorically excludes time and attendance requirements from being considered essential functions of a position and narrowly defines "functions" as limited to the activities performed in a job. It excludes from that concept other terms and conditions of employment that may be necessary to effectively and efficiently perform those activities. This blanket exclusion is contrary to the Board's longstanding precedent governing its adjudication of adverse actions based on physical inability to perform. Furthermore, the EEOC's position in this matter effectively supplants agencies as the primary authority for determining, *in the first instance*, whether time and attendance requirements are necessary to achieve the agency's mission in

---

[4] However, for purposes of section 7702, "civil service law" is distinct from discrimination law. *See King v. Lynch*, 21 F.3d 1084 (Fed. Cir. 1994) (recognizing that "civil service law" is not defined in Title 5, but concluding, based on the differentiation in section 7702 between civil service and discrimination law, that the former does not encompass the latter).

derogation of numerous provisions of civil service law interwoven throughout the CSRA.

¶9      Under the facts of this case, the Department of Homeland Security, the U.S. Customs and Border Protection (agency) removed the appellant from his position as a Customs and Border Protection Officer (CBPO) for physical inability to meet the conditions of his employment due to a medical condition.  *See* MSPB Docket No. DA-0752-10-0223-I-1, Initial Decision (ID) at 1 (Dec. 1, 2010).  The MSPB's administrative judge properly adjudicated the case as an appeal from an adverse action wherein the agency bore the burden of proof on the charge of inability to perform job duties and the appellant bore the burden of proof as to his affirmative defense of disability discrimination.  ID at 8-23.  In stating the legal principles governing the Board's analysis of the underlying adverse action, the administrative judge explicitly cited and properly relied upon longstanding Board precedent to the effect that, in a removal action for physical inability to perform, the Board must determine whether the employee was able to perform the functions of his position and whether the agency considered accommodation.  ID at 8-23 (citing *D'Leo v. Department of the Navy*, 53 M.S.P.R. 44, 51 (1992); *Schoening v. Department of Transportation*, 34 M.S.P.R. 556, 561 (1987)).[5]

¶10     The instant case is only one in a long line of Board precedent adjudicating adverse actions based on physical inability to perform the functions of a position.

---

[5] In deciding the appellant's petition for review, the full Board affirmed the initial decision.  As such, the Board's decision in this matter incorporates the legal analysis, including citations to Board precedent, set forth in the initial decision regarding whether the agency met its burden of proving the appellant's inability to perform the functions of his position.  In his petition for review, the appellant challenged the initial decision only with regard to the affirmative defense, and did not specifically question the administrative judge's decision under civil service law to sustain the agency's charge of physical inability to perform the functions of his position.  Therefore, I strongly reject the notion that the Board failed to cite any civil service law underpinning its conclusion that the EEOC's decision constitutes a misinterpretation of civil service law.

Indeed, in one of its earliest decisions, the Board deemed it "well settled that a physical disability may warrant the agency taking an adverse action." *Owens v. Department of the Air Force*, 8 M.S.P.R. 580, 583 (1981). Almost 30 years later, in *Slater v. Department of Homeland Security*, 108 M.S.P.R. 419, ¶¶ 3-11 (2008), the Board addressed the parameters of such a charge where, as here, the agency has established medical or physical requirements for the position. In *Slater*, the agency removed the employee based solely on a medical diagnosis and not on any observed deficiencies in his performance. The Board nevertheless concluded that the agency could remove the employee upon showing that the condition itself is disqualifying, its recurrence cannot be ruled out, and the duties of the position are such that a recurrence would pose a reasonable probability of substantial harm. In so holding, the Board relied on 5 C.F.R. § 339.203, which authorizes agencies to "establish physical requirements for individual positions without [Office of Personnel Management (OPM)] approval when such requirements are considered essential for successful job performance . . . [and] clearly supported by the actual duties of the position . . . ." The Board noted that OPM promulgated the regulation in order "'to allow agencies greater flexibility in setting appropriate medical standards and requirements.'" *Slater*, 108 M.S.P.R. 219, ¶ 10.

¶11        More recently, in *Fox v. Department of the Army*, 120 M.S.P.R. 529, 544-48 (2014),[6] the Board affirmed the appellant's removal from her position as Program Manager for the U.S. Army Corps of Engineers on the ground that her request for a permanent telework arrangement would not permit her to carry out the essential functions of her position, insofar as those functions required, at least to some extent, some travel and face-to-face interactions. The Board held that where an appellant does not occupy a position with medical standards, in order to establish

_____

[6] The Board distinguished *Fox* from *Slater* insofar as the position at issue in *Fox* did not have medical or physical requirements. However, the Board's discussion of essential functions is still pertinent here.

a charge of physical inability to perform, "the agency must establish that the appellant's medical condition prevents her from being able to safely and efficiently perform the core duties of her position." *Id.* at 544. Deeming "core duties" to be synonymous with "essential functions," the Board looked to 29 C.F.R. § 1630.2(n)(1) as guidance in determining when a function may be deemed essential and what evidence may be relevant in making such a determination. However, in assessing whether an agency has met its burden of proof in such cases, the Board has never adopted the EEOC's rather artificial line between essential *activities* to achieve outcomes and other terms and conditions of employment, such as time and attendance, that may be essential to the successful and efficient performance of those activities. Thus, in *Fox*, while travel and conducting face-to-face interactions were arguably only means to achieve the duties of a Program Manager, the Board did not thereby exclude them from being considered essential in ultimately finding that the agency could remove the appellant for failing to meet those terms and conditions of her position.

¶12        Consistent with Board precedent, the MSPB administrative judge in the instant case examined the record and found that "according to the medical standards and physical requirements, as well as the position description for a CBPO, the appellant was expected to work extended or unscheduled hours including weekends and holidays; was required to rotate shifts, assignments and duty stations; and was obliged to perform substantial amounts of overtime." ID at 8. Based on undisputed facts and stipulations, she found that the appellant was unable to work rotating shifts or work all of the overtime to which he might have been assigned due to his sleep apnea. ID at 8. Applying civil service law, the administrative judge therefore properly sustained the agency's charge that the appellant was physically incapable of meeting the conditions of employment and

the Board properly affirmed the administrative judge's factual and legal findings.[7] The EEOC's categorical exclusion of certain terms and conditions of employment from being considered essential to the effective and efficient performance of the position is fundamentally at odds with the Board's jurisprudence concerning adverse actions based on physical inability to perform.

¶13      More generally, the EEOC's decision is also contrary to civil service law governing the adjudication of time and attendance deficiencies of federal employees.  In *Davis v. Veterans Administration*, 792 F.2d 1111, 1113 (Fed. Cir. 1986), the U.S. Court of Appeals for the Federal Circuit[8] recognized that "[a]n essential element of employment is to be on the job when one is expected to be there . . . .  Moreover, absence without leave is not excused by acceptable performance when an employee does choose to appear.  Acceptable performance is a separate element of one's obligations to an employer."  Consistent with this position, the court has also held that nexus to the efficiency of the service—a required element to be proven in any adverse action appeal—is automatically established in cases of absence without leave.  *See Bryant v. National Science Foundation*, 105 F.3d 1414, 1417 (Fed. Cir. 1997).  Similarly, from the outset, the Board has recognized that attendance-related problems are valid reasons for taking adverse actions, including removals.  *See Ajanaku v. Department of Defense*, 44 M.S.P.R. 350, 355 (1990) ("an essential element of employment is to be on the job when one is expected to be there"); *Sanders v. Veterans Administration*, 11 M.S.P.R. 434, 437 (1982) ("no organization can operate successfully without a reliable work force"); *Clemmons v. U.S. Postal Service*, 5 M.S.P.R. 363, 365 (1981).  Remarkably, the EEOC's decision now turns this

---

[7] Contrary to the majority's view, *see* Spec. Pan. Op., ¶ 31, the trier of fact in this case is the MSPB's administrative judge.

[8] Decisions of the Federal Circuit are controlling authority for the Board.  *See Fairall v. Veterans Administration*, 33 M.S.P.R. 33, 39, *aff'd*, 844 F.2d 775 (Fed. Cir. 1987).

civil service law on its head insofar as it effectively requires agencies to tolerate attendance problems absent a showing of undue hardship if an employee can demonstrate the ability to perform the activities of the position whenever he or she might be in attendance.

      2. *The EEOC's Decision Constitutes a Misinterpretation of Various Statutory Provisions within Title 5 and the CSRA*

¶14      In addition to judicial and Board precedent, the term "civil service law" embodies statutory provisions that are within Title 5, enacted as part of the CSRA, and have a bearing on civil servants. *See Horner v. Merit Systems Protection Board*, 815 F.2d 668, 671 (Fed. Cir. 1987). The EEOC's categorical exclusion of time and attendance as essential functions is contrary to the comprehensive personnel management scheme that Congress created in enacting the CSRA that clearly gives agencies the primary authority to identify, *in the first instance*, essential functions of a position. For example, in 5 U.S.C. §§ 6101 et seq., Congress explicitly gives each agency head the authority and responsibility to establish the basic workweek and tours of duty necessary to carry out the agency's functions. Likewise, under implementing regulations promulgated by OPM at 5 C.F.R. § 610.121(b)(1), the agency head must schedule the work of his or her employees to accomplish the mission of the agency.

¶15      Similarly, chapter 43 of Title 5 governs performance management in the federal government. Congress mandated that agencies "establish performance standards which will, to the maximum extent feasible, permit the accurate evaluation of job performance on the basis of objective criteria (which may include the extent of courtesy demonstrated to the public) related to the job in question for each employee or position under the system" and must routinely communicate performance standards and the "critical elements of the employee's position." 5 U.S.C. § 4302(b). In its implementing regulations, OPM defines "performance" as the "accomplishment of work assignments or responsibilities" and "performance standard" as the "management-approved expression of the

performance threshold(s), requirement(s), or expectation(s) that must be met to be appraised at a particular level of performance . . . [and] may include, but is not limited to, quality, quantity, *timeliness, and manner of performance*." 5 C.F.R. § 430.203 (emphasis added). A "critical element" of a position is "a work assignment or responsibility of such importance that unacceptable performance on the element would result in a determination that an employee's overall performance is unacceptable." *Id.*

¶16    Congressional regard for the agency's authority, in the first instance, to determine terms and conditions of employment is similarly expressed in the labor relations provisions of the CSRA. *See* 5 U.S.C. §§ 7101 et seq. Specifically, 5 U.S.C. § 7106 gives management exclusive authority, subject to undertaking permissive bargaining, with regard to assigning work, determining the personnel by which the agency operations shall be conducted, and taking disciplinary actions. Indeed, the Federal Labor Relations Authority has long held that "a decision as to what will constitute an employee's tour of duty is a decision by management as to when and where an employee's services can best be used," and that therefore, any change in an employee's tour of duty is negotiable only at its election under 5 U.S.C. § 7106(b). *See Department of the Air Force, Scott Air Force Base, Illinois and National Association of Government Employees, Local R7-23*, 33 F.L.R.A. 532, 1988 WL 213548, at *9-*10 (F.L.R.A. Oct. 28, 1988). Thus, the EEOC's decision misinterprets various statutory provisions within Title 5 and the CSRA.

C. The EEOC's Decision That the MSPB Misinterpreted Discrimination Law Has No Reasonable Basis

¶17    In finding that the appellant failed to prove his affirmative defense of disability discrimination, the Board did not misinterpret discrimination law. The EEOC's determination that the Board erred in this regard has no reasonable basis. The appellant claimed that the agency discriminated against him by failing to accommodate his disability of sleep apnea. ID at 9. In accordance with both

civil service and discrimination law, the administrative judge correctly noted that the appellant bore the burden of proof with regard to his affirmative defense of disability discrimination.[9] She also recognized that an agency must provide a reasonable accommodation to the known limitations of a qualified individual with a disability unless to do so would create an undue hardship, and that its failure to do so constitutes disability discrimination. ID at 9-10. She correctly explained that, in order to prevail on his disability discrimination affirmative defense, the appellant must show, as a threshold matter, that he is a qualified individual with a disability.[10] ID at 9-10. The administrative judge properly defined "qualified individual with a disability" consistent with the cited authorities at 42 U.S.C. § 12111(8), 29 C.F.R. § 1630.2(m), and the Board's decision in *Simpson*, as "a person with the skills, experience, education and other job-related requirements of the employment position such individual holds and who, with or without reasonable accommodation, can perform the essential functions of such position." ID at 10-11. As a result, the administrative judge clearly committed no error of discrimination law in setting forth the legal parameters of the appellant's affirmative defense.

---

[9] The administrative judge also properly explained that as a federal employee, the appellant's claim of discrimination on the basis of disability arises under the Rehabilitation Act of 1973; the regulatory standards for the Americans with Disabilities Act (ADA), and the Americans with Disabilities Act Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, are incorporated by reference into the Rehabilitation Act; and, thus, the Board applies them in determining whether there has been a Rehabilitation Act violation. ID at 3 n.5 (citing 29 U.S.C. § 791(g); *Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 8 (2010)).

[10] The administrative judge also indicated that, in order to prevail, the appellant must articulate to the extent possible a reasonable accommodation under which he believes that he could perform the essential duties of his position or of a vacant funded position to which he could be reassigned. As the Board subsequently noted, however, this was error insofar as it suggested that the appellant's ultimate burden of proof was less than one of preponderant evidence. *Alvara v. Department of Homeland Security*, 116 M.S.P.R. 627, ¶ 4 n.1 (2011).

¶18       Similarly, the evidentiary record fully supported the administrative judge's findings and conclusions of law as to the appellant's failure to establish his claim of disability discrimination.  Specifically, as a reasonable accommodation for his sleep apnea, the appellant requested that his work schedule be modified so that he not be assigned to the graveyard shift and only be required to work limited amounts of overtime.  ID at 11.  The agency argued that these restrictions precluded finding that the appellant was a qualified individual with a disability because working rotational shifts and substantial overtime are essential functions of the CBPO position.  ID at 11-22.  After a thorough examination of the record and testimony, the administrative judge found that:  "all of the witnesses testified that working rotating shifts and significant amounts of overtime were essential functions of the CBPO position"; "both the CBPO's medical standards and physical requirements and the CBPO position description provide that CBPOs work rotating shifts"; and the "position description clearly states that the CBPOs perform substantial amounts of overtime."  ID at 22.  In addition, she cited *Bouffard v. Michael Chertoff, Secretary, Department of Homeland Security (U.S. Customs and Border Protection)*, EEOC Appeal No. 0120065257, 2008 WL 276452, at *5 (Jan. 16, 2008), an EEOC opinion holding that the ability to work rotational shifts and overtime was an essential function of the CBPO position.

¶19       The appellant petitioned for review of the initial decision by the full Board. He did not directly challenge the administrative judge's decision to sustain the agency's charge of physical inability to perform the functions of his position, but rather alleged error in the judge's adjudication of his discrimination claim.  In particular, he challenged the judge's finding that the ability to work the graveyard shift and substantial overtime is an essential function of his position and that his inability to carry out that function precluded him from being a qualified individual with a disability.

¶20       In its decision, the Board quoted verbatim from the EEOC's regulation at 29 C.F.R. § 1630.2(n)(3), which lists the following factors as relevant in

determining whether a function is essential: "the employer's judgment as to which functions are essential; written job descriptions prepared before advertising or interviewing applicants for the job; the amount of time spent on the job performing the function; the consequences of not requiring the incumbent to perform the function; the terms of a collective bargaining agreement; the work experience of past incumbents in the job; and/or the current work experience of incumbents in similar jobs." *Alvara*, 116 M.S.P.R. 327, ¶¶ 6-7. Acknowledging that the administrative judge had not expressly invoked these regulatory factors, the Board nonetheless found that her analysis of the evidence demonstrated that she had considered them in finding that the ability to work all rotational shifts and significant overtime was an essential function of the CBPO position. *Id.*, ¶ 7. Specifically, the Board noted that she considered the employer's judgment on the issue expressed through the consistent testimony of the six agency witnesses, including testimony that granting the appellant's requested accommodation would circumvent the agency's collective bargaining agreement; the official position description, as well as the medical and physical requirements of the CBPO position. *Id.* The Board also found that the administrative judge had properly cited and deferred to the EEOC's decision in *Bouffard*. *Id.*

¶21     There is no question that in both its initial and final decisions, the Board's adjudication of the appellant's affirmative defense of disability discrimination was entirely consistent in every respect with the statutory and regulatory authorities governing that question. Specifically, the Board's consideration of whether the ability to work rotational shifts and significant overtime is an essential function of the CBPO was precisely aligned with the EEOC's regulation setting forth the types of factors and evidence to be considered in examining that question. Nevertheless, in considering the Board's decision pursuant to its authority under 5 U.S.C. § 7702(b)(1), the EEOC declared that *Bouffard* was wrongly decided on the issue of the essential functions of the CBPO position and overturned it on that point, announcing a categorical exclusion of time and

attendance requirements from essential functions. The EEOC then concluded that, "as the Board relied upon *Bouffard* in finding that the essential functions of a CBPO include working rotating shifts and significant amount of overtime," its decision constituted an incorrect interpretation of discrimination law. The EEOC's position is unreasonable by any standard.

¶22     Contrary to the majority's characterization of the Board's decision as relying "heavily" on *Bouffard*, Spec. Pan. Op., ¶¶ 11, 39, the Board did *not* rely solely, or even primarily, on *Bouffard* in finding that the essential functions of the CBPO position include rotational shifts and significant overtime. *Alvara*, 116 M.S.P.R. 627, ¶¶ 6-7. Rather, it looked first and foremost to the EEOC's regulation at 29 C.F.R. § 1630.2(n)(3) in analyzing the record in light of the factors that the EEOC itself has identified as relevant in assessing whether a function is essential. *Alvara*, 116 M.S.P.R. 627, ¶ 7. In this regard, the Board relied on the testimony of six agency witnesses—all of whom testified knowledgeably and at length as to the essential nature of the shift and overtime requirements of the CBPO position. *Id.*; *see* 29 C.F.R. § 1630.2(n)(3)(i). The Board relied on the official position description, as well as the preexisting medical and physical requirements for the position. *Alvara*, 116 M.S.P.R. 627, ¶7; *see* 29 C.F.R. § 1630.2(n)(3)(ii). The Board noted the agency's concern that accommodating the appellant would circumvent its collective bargaining obligations. *Alvara*, 116 M.S.P.R. 627, ¶ 7; *see* 29 C.F.R. § 1630.2(n)(3)(v). Consequently, whatever deference may be accorded the EEOC's decision to overturn *Bouffard* at this juncture, it by no means compels the conclusion that the Board erred in finding that the appellant was not a qualified individual because his disability precluded him from performing the essential functions of his position.

¶23     But even if the Board had relied exclusively on *Bouffard*, the EEOC's decision to overturn that opinion in the context of its review here does not render the Board's decision defective as a matter of discrimination law. In overturning

*Bouffard*, the EEOC announced a major rule of law in holding that time and attendance requirements can never be deemed to be functions, much less essential functions, of a position. *Petitioner v. Jeh C. Johnson, Secretary, Department of Homeland Security (Customs and Border Protection), EEOC Petition No. 0320110053, 2014 WL 3571431, at \*5 (E.E.O.C. July 10, 2014)*. It did so citing its Enforcement Guidance and "precedential federal sector cases." *Id.* at \*6. As to the deference afforded the EEOC's guidance, however, the Supreme Court has repeatedly declined to find that the EEOC's interpretive guidelines have the force of law and to give those guidelines deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Vance v. Ball State University*, 133 S. Ct. 2434 (2013); *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013); *Hosanna-Tabor Evangelical Lutheran Church and School v. Equal Employment Opportunity Commission*, 132 S. Ct. 694, 707 (2012). Furthermore, none of the federal sector cases cited in the EEOC decision support the proposition that time and attendance requirements can never be deemed essential functions. *See, e.g.*, *McCullough v. Marvin T. Runyon, Jr., Postmaster General, U.S. Postal Service, (S.E./S.W. Region)*, EEOC Request No. 05950539, 1996 WL 33276703 (E.E.O.C. Apr. 25, 1996) ("in a case involving excessive absences from work, a complainant may prove that he or she is a 'qualified disable person'—in spite of such absences—by first showing that there is a sufficient nexus between the absences and the purported disability").

¶24  Moreover, although the EEOC's Guidance may reflect its theory that "functions" comprise only the activities or duties of a position leading to outcomes, and hence, can *never* include time and attendance requirements, nothing in the EEOC's formal regulations hints at, much less compels, such a reading of the ADA. In fact, the opposite is true insofar as those regulations clearly contemplate a case-by-case approach to the question of essential functions. *See* 29 C.F.R. § 1630.2(n). Furthermore, the EEOC's position in this regard is contrary to the overwhelming weight of judicial authority. *See, e.g.*,

*Rios-Jiminez v. Principi*, 520 F.3d 31, 42 (1st Cir. 2008) ("at the risk of stating the obvious, attendance is an essential function of any job"); *Mason v. Avaya Communications, Inc*., 357 F.3d 1114, 1122 (10th Cir. 2004) (physical attendance was an essential function of the position because it required teamwork and supervision); *Jovanovic v. In-Sink-Erator Division of Emerson Electric Co.*, 201 F.3d 894, 899-900 (7th Cir. 2000) ("Common sense dictates that regular attendance is usually an essential function in most every employment setting"); *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996); *Tyndall v. National Education Centers, Inc*., 31 F.3d 209, 213 (4th Cir. 1994); *Jackson v. Veterans Administration*, 22 F.3d 277, 279 (11th Cir. 1994) (daily attendance may be, but is not always, an essential function); *see also Jefferson v. Time Warner Cable Enterprises LLC*, No. 12-5714, 2014 WL 3973513 (9th Cir. Aug. 15, 2014).

¶25    Contrary to the majority's view, the Board did not "misunderstand" or "misread" the Commission's decision.  Spec. Pan. Op., ¶¶ 27-30.  Rather, the Board fully and correctly understands the Commission's decision as *categorically* excluding time and attendance requirements from being deemed essential under the ADA on the theory that they are not functions at all.  As such, it is incongruous to conclude, as does the majority, that "nothing in the Commission's decision restricts or prohibits any agency's managerial and operational prerogatives or any agency's right to establish the terms and conditions of employment."  *Id.*, ¶ 31.  On the contrary, the EEOC's decision effectively eviscerates the authority of federal agencies, in the first instance, to establish time and attendance requirements as essential terms and conditions of employment.

¶26    At the same time, the majority widely misses the mark in describing the Board's decision as holding that an agency has "unfettered discretion" to define essential functions or that management's evaluation of a position's essential functions as "dispositive."  Spec. Pan. Op., ¶ 28.  As evidenced in its initial

decision, which the Board adopted, the administrative judge undertook the very fact-specific, case-by-case approach to the question of essential functions that is prescribed in the EEOC's own regulations. She concluded, based on the overwhelmingly consistent witness testimony, the position description, and the pre-established medical and physical requirements of the position, that working rotational shifts and significant overtime were essential functions of the CBPO position. These are all factors which the EEOC has identified under 29 C.F.R. § 1630.2(n) as relevant in assessing what are essential functions. The Board's decision therefore was entirely consistent with the EEOC's regulations, existing precedent, and judicial authority and, as such, cannot be found to be a misinterpretation of discrimination law.

¶27 The majority regrettably concludes that, because this case implicates discrimination law within the purview of the EEOC,[11] "that is the end of the story." Spec. Pan. Op., ¶ 45. In so doing, it follows in the misguided tradition of previous Special Panels in deferring to the EEOC whenever the dispute concerns discrimination law. However, in my view, this is an abdication of its statutory responsibility to resolve important issues, such as that facing the Special Panel

---

[11] The majority summarily finds that the "Commission's interpretation of discrimination law and their decision are reasonable," Spec. Pan. Op., ¶ 45, without any analysis of the EEOC's departure from its own regulation in announcing the categorical exclusion of time and attendance requirements from essential functions or of its cramped interpretation of "function" to exclude such requirements contrary to the position adopted by most federal courts of appeal.

here, in which civil service and discrimination law converge but the interpretations of the MSPB and the EEOC do not.


_____
Anne M. Wagner
Vice Chairman
Merit Systems Protection Board